Patrick J. Cerillo, Esq.
Patrick J. Cerillo, LLC
4 Walter Foran Blvd., Suite 402
Flemington, NJ 08822
T: (908) 284-0997
F: (908) 284-0915
pjcerillolaw@comcast.net
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-30, <br><br> Defendants. | Case No. 3:12-cv-03896-JAP-DEA <br><br> Motion day: September 17, 2012 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS AND/OR SEVER COMPLAINT AGAINST DEFENDANT JOHN DOE 22 AND QUASH SUBPOENA AGAINST SAME [DKT. 8]**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................5

II.    DEFENDANT   SHOULD   NOT   BE   ALLOWED   TO   PROCEED
       ANONYMOUSLY ........................................................................7

III.   JOINDER IS PROPER ...................................................................9

       A.    The Infringement Occurred Through a Series of Transactions............10

             i.    The Supreme Court Encourages Joinder........................................13

       B.    There Are Common Issues of Fact and Law .........................................15

       C.    The Time Period For Infringement.........................................................16

       D.    Joinder Promotes Judicial Efficiency ....................................................17

IV.    THIS COURT SHOULD NOT QUASH THE SUBPOENA.........................18

       A.    The Subpoena Does Not Impose an Undue Burden ..............................21

       B.    Plaintiff Has A Proper Purpose...............................................................22

       C.    Plaintiff's Settlements are Proper ..........................................................24

V.     CONCLUSION.............................................................................25

# TABLE OF AUTHORITIES

AF Holdings LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917
 (D.D.C. Aug. 6, 2012) .......................................................................................5, 24

Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C.
 2011) .................................................................................................................16

Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ..................21

Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011) ..................................................8

Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1094 (2d Cir. 1992)...........10

K-Beech, Inc. v. John Does 1-39, 2:11-cv-04776-FSH-PS, (D.N.J. Jan. 6, 2012) ...5

Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444,
 453 (D. Mass. 2011) ...........................................................................................9

Malibu Media, LLC v. John Does 1-13, CV 12-1156 JFB ETB, 2012 WL 2325588
 (E.D.N.Y. June 19, 2012) ....................................................................................8

Malibu Media, LLC v. John Does 1-15, CIV.A. 12-2077, 2012 WL 3089383 (E.D.
 Pa. July 30, 2012) ................................................................. 6, 16, 18, 21

Malibu Media, LLC v. John Does 1-18, 2:12-cv-02095-LDD (E.D. Pa. Aug. 6,
 2012) .................................................................................................................6

Malibu Media, LLC v. John Does 1-22, 2:12-cv-02083-CDJ (E.D. Pa. July 30,
 2012) .................................................................................................................6

Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291
 (S.D.N.Y. Aug. 24, 2012)..............................................................................10, 17

Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, *4 (M.D. Fla. July
 6, 2012) .............................................................................................................24

Marek v. Chesny 473 U.S. 1, 11 (1985) ..................................................................25

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)......................11

Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D.
 Fla. Apr. 12, 2012)............................................................................................15

Patrick Collins Inc. v. John Does 1-18, 2:11-cv-07252-MSG (E.D. Pa. May 7,
 2012) .................................................................................................................6

Patrick Collins Inc., v. John Does 1-43, 2:11-cv-04203-FSH-PS (D. N.J. Jan 6,
 2012) .............................................................................................................6, 10

Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5,
 2012) ............................................................................................................12, 17

Patrick Collins, Inc. v. John Does 1-33, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012) ............................................................18

Raw Films v. John Does 1-15, 2012 WL 1019067, at *4 (E.D. Pa. March 26, 2012) ........................................................................................................13

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012) ............................................................ 6, 7, 8, 18

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012)......................................................19

Sosa v. DirectTV, 437 F. 3d 923, 937 (9th Cir. 2006) ............................25

Third Degree Films v. Does 1-36, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012)..........................................................................21

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) .........13

United States v. Mississippi, 380 U.S. 128 (1965)..................................14

Voltage Pictures, LLC, v. Does, 1-5,000, 10-cv-00873-BAH, at *6 (D. D.C. Feb. 24, 2011) ................................................................................8

## I.   **INTRODUCTION**

Plaintiff respectfully requests the Court deny Defendant's Motion because Defendant has not provided a valid reason to quash the subpoena and joinder of the Defendants is proper. "[T]his case involves a copyright owner's effort to protect a copyrighted work from unknown individuals, who are allegedly illegally copying and distributing the work on the Internet." AF Holdings LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917, *1 (D.D.C. Aug. 6, 2012). Plaintiff has suffered great harm due to infringements committed by thousands of residents in this District and has no option but to file these suits to prevent the further widespread theft of its copyright.

Courts in the Third Circuit and throughout the country routinely deny motions like the one before this Court. The District Court of New Jersey has issued two opinions addressing the same issues in BitTorrent copyright infringement actions, holding that similar motions should be denied because Plaintiff's right to pursue its claim for copyright infringement outweighs any asserted rights to privacy by the Doe defendants and that joinder of the defendants is proper. See K-Beech, Inc. v. John Does 1-39, 2:11-cv-04776-FSH-PS, (D.N.J. Jan. 6, 2012) (Exhibit A) ("Plaintiff's interest in discovering Defendants' identities outweighs Defendants' interests in remaining anonymous. Accordingly, the Court

finds that Plaintiff is entitled to the information in the subpoenas provided to the ISPs so that it may effect proper service upon Defendants once their identities are discovered."); see also Patrick Collins Inc., v. John Does 1-43, 2:11-cv-04203-FSH-PS (D. N.J. Jan 6, 2012) (Exhibit B) ("Plaintiff has also sufficiently alleged a central need for the subpoenaed information to advance the claim as it seems there is no other way for Plaintiff to obtain the information is seeks in order to go forward with its copyright infringement claim.")

Other Courts in the Third Circuit have reached similar conclusions. See Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012); Patrick Collins Inc. v. John Does 1-18, 2:11-cv-07252-MSG (E.D. Pa. May 7, 2012); Malibu Media, LLC v. John Does 1-15, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012); Malibu Media, LLC v. John Does 1-18, 2:12-cv-02095-LDD (E.D. Pa. Aug. 6, 2012); Malibu Media, LLC v. John Does 1-22, 2:12-cv-02083-CDJ (E.D. Pa. July 30, 2012). "There is extensive caselaw supporting Plaintiff's actions in this case and precluding the Motion's requested relief. Plaintiff's copyright infringement action is contemplated by modern law and shall proceed." Id.

At this stage of the litigation process, Plaintiff has no other option but to file suit against the owners of these IP addresses to obtain the infringers identity. If this Court were to follow Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement it suffers on a daily basis.

6

## II.   DEFENDANT SHOULD NOT BE ALLOWED TO PROCEED ANONYMOUSLY

Without obtaining the identity of the Defendant, Plaintiff cannot properly proceed with its claim for copyright infringement. If the Court were to allow Defendant to proceed anonymously, and prevent Plaintiff from receiving the identity of the Doe Defendant, Plaintiff would not be able to serve the Defendant. Additionally, Plaintiff would be unable to verify any of the defenses asserted by the Defendant. Here, Defendant claims he was working abroad at the time of infringement and was therefore unable to commit the acts. While Plaintiff will take this into consideration moving forward, Plaintiff has no way to verify whether these facts are true. An unsworn, anonymous assertion of defense in a motion should not be a basis for quashing the subpoena. Ultimately, without Defendant's identity or ability to verify the information provided, Plaintiff will be severely prejudiced and face countless procedural difficulties. "These are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012).

Rule 11(a) requires that "[e]very . . . written motion, and other paper must be signed . . . by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number." Fed. R. Civ. P. 11(a).

"[I]t is impossible for any party or for the Court to communicate with the movant, John Doe, in this action. A party cannot litigate an action under such circumstances." Malibu Media, LLC v. John Does 1-13, CV 12-1156 JFB ETB, 2012 WL 2325588 (E.D.N.Y. June 19, 2012).

The Third Circuit has recognized that "[i]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011). A party must move this Court to enter a protective order "for good cause" in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Otherwise, a party may not proceed to litigate in federal court anonymously except in rare circumstances." Raw Films, Ltd. v. John Does 1-15, CIV. A. 11–7248, 2012 WL 1019067, at *8 (E.D. Pa. Mar. 26, 2012). "That a [party] may suffer embarrassment or economic harm is not enough." Doe v. Megless, 654 F.3d 408.

Defendant is simply seeking to avoid being sued for copyright infringement. See Voltage Pictures, LLC, v. Does 1-5,000, 10-cv-00873-BAH, at *6 (D. D.C. Feb. 24, 2011) ("The use of anonymity as a shield from copyright liability is not a motivation that warrants the protection from the Court"). "The potential embarrassment to Does 1–38 of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously." Liberty Media

Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 453 (D. Mass. 2011).

Without Defendant's identifying information, Plaintiff cannot even be certain that it is bringing an action against a proper party to this case. It is nearly impossible to litigate this case without knowing Defendant's identification because it would inhibit both Plaintiff and this Court from communicating with Defendant.

## III.   **JOINDER IS PROPER**

Fed. R. Civ. P. 20 permits joinder when plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." Rule 20(a) not only permits permissive joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability.   Plaintiff has done both here.

This Court, consistent with the above analysis, issued an opinion stating that joinder was proper because each Defendant participated in the same swarm and the claims against them clearly contain common questions of law and fact.

> "Plaintiff's Complaint sufficiently alleges common questions of law or fact by asserting identical claims against all of the Doe Defendants in this action and suing only those Doe Defendants in the exact same swarm. Therefore, the Court finds joinder in this action is proper and declines to sever any John Doe Defendant from this action."

<u>Patrick Collins Inc., v. John Does 1-43</u>, 2:11-cv-04203-FSH-PS (D. N.J. Jan 6, 2012) (Exhibit B).  Likewise, all of the Doe defendants in this case participated in the same swarm.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal joinder procedures."  <u>Ginett v. Computer Task Group, Inc.</u>, 962 F.2d 1085, 1094 (2d Cir. 1992) (<u>quoting</u> 6A Wright, Miller & Kane § 1581).  In light of this idea, the Southern District of New York recently found joinder proper noting that "the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same 'series of transactions or occurrences'."  <u>Malibu Media, LLC v. John Does 1-5</u>, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012).

## A.   <u>The Infringement Occurred Through a Series of Transactions</u>

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to be proper when there is something other than a direct transaction. "Series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different but for each of the Defendants' infringements.

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near identical case, expending substantial effort to understand the allegations in the complaint and the applicable law. Judge Randon summarized the plaintiff's allegation asserting that each Defendant copied the same piece of the same file as follows:

> Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie.
> By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

<u>Patrick Collins, Inc. v. John Does 1-21</u>, CIV.A. 11-15232, 2012 WL 1190840, at

*4-5 (E.D. Mich. Apr. 5, 2012).  Significantly, Judge Randon then explained

through the force of clear deductive logic that each Defendant obtained the piece of

plaintiff's movie in one of four ways all of which relate directly back to one

individual seed.

> If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:
>
> 1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or
>
> 2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or
>
> 3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or
>
> 4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.
>
> In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

<u>Id.</u>  Having limited the universe to four possibilities the court correctly

concluded the transaction was logically related.

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same

Torrent file that was created by the same initial seeder, intending to:
1) utilize other users' computers to download pieces of the same
Movie, and 2) allow his or her own computer to be used in the
infringement by other peers and Defendants in the same swarm.

Id.

### i. The Supreme Court Encourages Joinder

"Under the Rules, the impulse is toward entertaining the broadest possible
scope of action consistent with fairness to the parties; joinder of claims, parties and
remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S.
715, 724 (1966).

The Honorable Judge McLaughlin from the Eastern District of Pennsylvania
recently addressed this exact issue in a similar BitTorrent copyright infringement
action. Judge McLaughlin held joinder was proper even if the Doe defendants did
not transmit the pieces directly to each other because the claims arise out of the
same series of transactions. Raw Films v. John Does 1-15, 2012 WL 1019067, at
*4 (E.D. Pa. March 26, 2012).

> [E]ven if no Doe defendant directly transmitted a piece of the Work
> to another Doe defendant, the Court is satisfied at this stage of the
> litigation the claims against each Doe defendant appear to arise out of
> the same series of transactions or occurrences, namely, the
> transmission of pieces of the same copy of the Work to the same
> investigative server.

Id.

13

In <u>United States v. Mississippi</u>, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote.  Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact.  <u>Id.</u> at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color.  On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

<u>Id.</u> at 142.  Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the Defendants to have directly interacted with each other Defendant, or have shared a piece of the file with each and every Defendant when downloading the movie.  The Defendants

are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. In doing so, the Defendants all acted under the same exact system. Just as it was not alleged in <u>United States v. Mississippi</u> that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the Defendants to have shared the pieces of the movie with each other. It is sufficient that the Defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

**B.      There Are Common Issues of Fact and Law**

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact. "The Plaintiff meets this requirement. In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." <u>Nu Image, Inc. v. Does 1-3, 932</u>, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012). The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for

each putative defendant." <u>Call of the Wild Movie v. Does 1-1,062</u>, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

"Here, common questions of law and fact are present. Defendants are all accused of violating the same copyright laws. Additionally, the interconnectedness of using BitTorrent to complete the alleged acts creates common questions of fact. Consequently, we find that this low standard is satisfied." <u>Malibu Media, LLC v. John Does 1-15</u>, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012).

## C.    **The Time Period For Infringement**

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.  Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time.  As the Eastern District of Michigan explained the technology, even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer

six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

The Southern District of New York in recognizing that the concept of joinder is adaptable to changing technological landscapes impacting the complexity of lawsuits stated, "[w]hile the period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time." Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012). The Michigan Court further explained that time constraints should not impact that the infringements occurred through a series of transactions. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012)

## D.    Joinder Promotes Judicial Efficiency

Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants. "The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will

promote judicial efficiency." <u>Patrick Collins, Inc. v. John Does 1-33</u>, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012).

The Eastern District of Pennsylvania has addressed this issue and stated, "consolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy. Should that process reveal disparate defenses as to each party, the Court would consider such a fact relevant on a later review of joinder's propriety." <u>Raw Films, Ltd. v. John Does 1-15</u>, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012).

## IV.   <u>THIS COURT SHOULD NOT QUASH THE SUBPOENA</u>

This Court should not quash the subpoena because Plaintiff's need for the information to pursue its copyright infringement claim outweighs any privacy interest Defendant may have. <u>See</u> <u>Malibu Media, LLC v. John Does 1-15</u>, CIV.A. 12-2077, 2012 WL 3089383, *8 (E.D. Pa. July 30, 2012) ("An internet user engaging in peer to peer file sharing has a minimum expectation of privacy"). In <u>Malibu</u>, the Court noted that opening one's computer to the world, particularly for the purposes of copyright infringement, does not provide a Defendant with a significant privacy interest. "One court aptly summarized this sentiment by stating that, 'it is hard to understand just what privacy expectation he or she has after essentially opening up the computer to the world.' This expectation is even lower where the alleged transmissions include copyright protected works." <u>Id.</u>

This Court granted Plaintiff limited discovery to serve a subpoena on Defendant's ISP because Plaintiff has no other way to identify the Defendants and proceed with its copyright infringement case against them. Plaintiff has requested only the identifying information of the Defendants from their ISPs.

> The Court found good cause for ordering that discovery, *see* Fed.R.Civ.P. 26(b)(1), because the plaintiff showed that a subpoena seeking the subscriber information associated with the allegedly infringing IP addresses would be the only way for the plaintiff to identify the proper defendants in this case and proceed with its claims against them.[3] *See* Declaration of Tobias Fieser ¶ 9, 23, Pl.'s Mot. Ex. The information sought is thus highly relevant to the plaintiff's claims.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012). The Court also noted that Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." Id. at *14. When addressing the issue of whether the infringer is the account holder of the IP address, the Court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." Id.

Defendant relies heavily on the Eastern District of New York opinion where Judge Brown questioned the likelihood the infringer was the owner of the IP Address. See Def's Mot. at 8-10. Plaintiff respectfully disagrees and believes that recent technological advances make it more likely that a wireless account will be

19

secured and can easily be traced to a household where the subscriber either is the infringer or knows the infringer.  Recently, PC Magazine published an article regarding the scarcity of open wireless signals.  "These days, you are lucky to find one in 100 Wi-Fi connections that are not protected by passwords of some sort."[1] The author continues to explain why routers are now more likely to be secured. "The reason for the change is simple: the router manufacturers decided to make users employ security with the set-up software.  As people upgrade to newer, faster routers, the wide-open WiFi golden era came to an end."[2]  This article, published on March 26, 2012, supports the idea that most households have closed protected wireless internet routers that are not likely to be used by a neighbor or interloper.

Further, Plaintiff uses the same process as Federal Law Enforcement to identify cyber crimes.  In a Statement of Deputy Assistant Attorney General Jason Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he discusses how Federal law enforcement use IP addresses to identify an individual.

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[3]

---

[1] See Free Wi-Fi is Gone Forever www.pcmag.com/article2/0,2817,2402137,00.asp (Exhibit C).
[2] Id.
[3] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

While, as Defendant suggests, this process may not be 100% accurate, it is the most accurate and likely way to identify the person responsible for the use of that IP address. Indeed, it is the only way.

## A.     The Subpoena Does Not Impose an Undue Burden

Defendant incorrectly contends that a person's reputational injury constitutes an undue burden.   In order to establish good cause to demonstrate an undue burden, Defendant must provide "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).

Here, as other courts have held, "Defendant's broad claim of reputational injury fails to demonstrate a 'clearly defined and serious injury." Malibu Media, LLC v. John Does 1-15, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012).   "Although the Court acknowledges that there is some social stigma attached to consuming pornography, Defendant strenuously denies the allegations, and it is the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove." Third Degree Films v. Does 1-36, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012).   All defendants in lawsuits face some reputational risk.   This is not a reason to quash a subpoena and prevent Plaintiff from bringing its valid claim against Defendant.

**B.**    **Plaintiff Has A Proper Purpose**

The online theft of Plaintiff's property greatly damages its business, products, and reputation.  Accordingly, Plaintiff Malibu Media's motivation for bringing these suits is quite simply to hold the infringers liable for their theft and by so doing hopefully deter the future theft of its movies.  Malibu Media puts forth extensive time and effort to stop infringement of its movies on the Internet.

In addition to filing these suits, Malibu Media also employs staff whose sole responsibility is to issue take down notices and prevent the widespread access to infringing titles.  Indeed, Malibu Media makes a substantial effort to reduce the number of torrents available by issuing take down notices to infringing torrent sites.  Some sites refuse to comply, hiding off shore in unknown locations in countries that do not abide by US law, rendering suits like these necessary to impose a significant deterrence.

Defendant's assertions that Plaintiff has any purpose other than to stop infringement are both unwarranted, incorrect, and offensive.  Malibu Media would like nothing more than for infringers to feel it necessary to legally purchase its content.  Without filing suits like the one before this Court and educating the public that Malibu Media will not tolerate the infringement of its titles, Malibu Media fears it will lose its business.

During her time as Register of Copyright, Mary Beth Peters explained the rights of copyright holders in peer-to-peer infringement actions to the Senate

Judiciary Committee. "The law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission is infringement and copyright owners have every right to invoke the power of the courts to combat such activity. Every court that has addressed the issue has agreed that this activity is infringement." [4] Ms. Peters further explained the significant need for exactly the type of copyright infringement claims that are before this Court:

> [F]or some users of peer-to-peer technology, even knowledge that what they are doing is illegal will not be a sufficient disincentive to engage in such conduct. But whether or not these infringers know or care that it is against the law, the knowledge that such conduct may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect. While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences. Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services.

Id. (Emphasis added).  Earlier this month, the Middle District of Florida issued a well reasoned opinion that outlines all of the concerns presented by the Defendant in this case.   Ultimately, the Court held that "the John Doe Defendants are requesting the Court create a special exception under the Copyright Act for cases

---

[4] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html.

such as this in which the copyrighted material contains pornography. The Court is simply not inclined to take such an inappropriate action." <u>Malibu Media, LLC v. John Does 1-9</u>, 8:12-cv-669-T-23AEP, *4 (M.D. Fla. July 6, 2012) (Ex. D).

## C.   <u>Plaintiff's Settlements are Proper</u>

"Upon receipt of the identifying information sought in the subpoenas, the plaintiff is entitled to seek settlement with these individuals, or decide that pursuing a lawsuit against particular defendants is no longer feasible or cost-effective. Either course selected by the plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serves our system of justice." <u>AF Holdings LLC v. Does 1-1,058</u>, CIV.A. 12-0048 BAH, 2012 WL 3204917, *14 (D.D.C. Aug. 6, 2012).

Defendant mischaracterizes Plaintiff's purpose for engaging in settlement activities, suggesting that simply the fact that a Defendant named in litigation may be offered a settlement constitutes improper litigation tactics. Prior to actually proceeding against defendants, it is proper to contact them to discuss settlement options. The only difference between this case and the countless others filed every day by other plaintiffs in a broad array of civil litigation is that the Plaintiff does not have the ability to identify the defendants before the suit is filed.

> [T]he John Doe Defendants' argument is misguided in that this type of case creates special circumstances that would require judicial review of any motivation to settle, and the Court is not inclined to

24

create a special proceeding to inform any particular John Doe Defendant of a right which is obviously commonly known, i.e. his or her right to defend and litigate this lawsuit.

Id. at *7.

The Supreme Court has stated that public policy favors resolutions through settlement. "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." Marek v. Chesny 473 U.S. 1, 11 (1985).  Further, Plaintiff has a First Amendment right under the petition clause to make the demand. See Sosa v. DirectTV, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the protections of the Petition Clause extend to settlement demands as a class," including those made during and prior to a suit.)

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: August 31, 2012

Respectfully submitted,

By: /s/Patrick Cerillo

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2012 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/*Patrick Cerillo*