**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | : | Civil Action No. 12-3896-MAS-DEA |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM AND ORDER** |
| **JOHN DOES # 1-30,** | : | |
| Defendants. | : | |

This matter comes before the Court on a Motion to Quash and Sever filed by John Doe # 25 on August 28, 2012 [dkt. no. 10], and a Motion to Quash and Sever, and to Proceed Anonymously filed by John Doe # 21 on August 23, 2012 [dkt. no. 9]. Plaintiff Malibu Media, LLC filed Opposition to John Doe # 25's Motion on September 17, 2012 [dkt. no. 15] and Opposition to John Doe # 21's Motion on August 31, 2012 [dkt. no. 11]. John Doe # 21 filed a Reply on September 10, 2012 [dkt. no. 13].[1][2] The Court has considered the submissions of the Parties pursuant to Fed. R. Civ. P. 78 and for the reasons set forth herein, Defendants' Motions are **DENIED**.

---

[1] John Doe # 21, in his or her Reply, asks the Court to treat his or her Motion as a motion to dismiss. Because the Court declines to quash the Subpoenas or sever the claims, and because John Doe # 21 has cited no authority to support this request, it is denied as moot.

[2] John Doe # 25 submitted an untimely Reply on December 4, 2012. See dkt. no. 22. The Court will address the arguments raised by John Doe # 25 in his or her Reply insofar as they are consistent with arguments already raised by John Doe # 25 or John Doe # 21 in their timely submissions to the Court.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This is an action for copyright infringement brought against 30 individuals (collectively, "Defendants") who are identifiable to Plaintiff Malibu Media, LLC ("Malibu" or "Plaintiff") only by their Internet Protocol ("IP") addresses. Plaintiff filed a Complaint on June 26, 2012 alleging direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501, and contributory copyright infringement by Defendants. See Pl.'s Compl., dkt. no. 1, at ¶ 7.

A.      **The Parties**

Plaintiff Malibu Media, LLC is a limited liability company organized and existing under the laws of the State of California. Id. at ¶ 1. Plaintiff owns the copyrights to 30 pornographic motion pictures. Id. at ¶ 12. Together, each of the 30 motion pictures (collectively, the "Works") are available on an Internet website as a single torrent file. Id. at ¶ 14. According to Plaintiff's Complaint, each of the Defendants illegally copied and distributed the same torrent file containing Plaintiff's Works. Id. at ¶ 15.

John Doe # 25 is "an individual who wishes to remain anonymous." John Doe # 25's Br. at 1. John Doe # 25's Internet Service Provider ("ISP") is Verizon. Id. "According to Verizon's records from the time of the alleged incident, [John Doe # 25's IP address] was 108.35.214.163." Id. at 1-2.

John Doe # 21 is also identified only by his or her IP address, 68.199.149.124. John Doe # 21's Br. at 2. John Doe # 25's and John Doe # 21's IP addresses, along with others, were linked by Plaintiff to the unlawful activity alleged in the Complaint. See Pl.'s Compl. at ¶¶ 39-45, Exhibit A.

### B. <u>BitTorrent</u>

BitTorrent is one of the most common peer to peer file sharing protocols used for sharing large amounts of data. Pl.'s Compl. at ¶ 17. BitTorrent is unique in its ability to distribute large files without creating a heavy load on the source computer or network. <u>Id.</u> at ¶ 18. The BitTorrent process of transferring files (in this case alleged to be copyright-protected files) is started by an initial "seeder" who uploads a torrent file onto a host website. <u>Id.</u> at ¶¶ 22-29. Once the initial seeder has uploaded the torrent, other users who have downloaded the BitTorrent Client program may then download individual pieces of the torrent file through what is known as a "swarm." <u>Id.</u> Users inside the swarm are able to simultaneously download and upload individual pieces of the file from each other. <u>Id.</u> When a user receives all component pieces, the BitTorrent Client reassembles the pieces and the user is able to view the file. <u>Id.</u> at ¶ 38. Then, if the user does not affirmatively stop the BitTorrent program, he too will become a seeder, and this process will repeat itself. Pl.'s Opp. at 21.

### C. <u>The acts of John Does # 1-30</u>

Plaintiff asserts that it has identified each of the Defendants as participants in a swarm that was distributing Plaintiff's copyright-protected Works. Pl.'s Compl. at ¶¶ 39-45. As mentioned above, Plaintiff linked each of the Defendants to its Works through their unique IP address.[3] <u>Id.</u> at ¶¶ 39-45, Exhibit A. Plaintiff determined that each of the Defendants' computers, through their identified IP address, copied and transmitted a full copy, or a portion thereof, of Plaintiff's Works. <u>Id.</u> at ¶¶ 39-45. Plaintiff now seeks to determine the Defendants' actual identities.

---

[3] An IP address is the number that is assigned by an ISP to devices, such as computers, that are connected to the Internet. Pl.'s Compl. at ¶ 3.

D. **Procedural History**

On July 2, 2012, the Court granted Plaintiff's Motion for Leave to Serve Third-Party Subpoenas on Defendants' ISPs. See dkt. no. 6. The Subpoenas seek personally identifying information—name, physical address, telephone number, email address, and Media Access Control ("MAC") address—for each of the Defendants. See Pl.'s Br. Mtn. for Leave to Serve Third-Party Subpoenas, dkt. no. 4-7, at 1. Two of the John Doe Defendants—John Does # 21 and # 25—now seek to quash the third-party Subpoenas as well as severance of Plaintiff's claims against them from the other Defendants in the Complaint.

## II. DISCUSSION

A. **Motions to Quash**

1. **Legal Standard**

FED. R. CIV. P. 45(c)(3)(A) sets forth the circumstances under which the Court must quash a subpoena. In relevant part, it provides:

> (c) Protecting a Person Subject to a Subpoena.
>    (3) *Quashing or Modifying a Subpoena.*
>       (A) *When Required.* On timely motion, the issuing court
>       must quash or modify a subpoena that:
>          (i) fails to allow a reasonable time to comply;
>          (ii) requires excessive travel by a non-party;
>          (iii) requires disclosure of privileged or other
>          protected matter, if no exception or waiver applies; or
>          (iv) subjects a person to undue burden.

"The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of [FED. R. CIV. P. 45] are satisfied." Malibu Media, LLC v. John Does 1-15, 2012 WL 3089383, at *5 (E.D. Pa. Jul. 30, 2012) (citing City of St. Petersburg v. Total Containment, Inc., 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008)). This has been described as "a heavy

burden." Id. (citing Dexter v. Cosan Chem. Corp., 2000 U.S. Dist. LEXIS 22134, at *7-8 (D.N.J. Oct. 24, 2000)).

    **2.    Standing**

Whether a party has standing to challenge the validity of a third-party subpoena issued to a non-party depends upon the type of challenge being advanced.[4] On the one hand, "[a] party has standing to bring a motion to quash or modify a subpoena upon a non-party when the party claims a personal privilege in the production sought." Schmulovich v. 1161 R. 9, LLC, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) (quoting DIRECTV, Inc. v. Richards, 2005 WL 1514187, at *1 (D.N.J. June 27, 2005) (citing Catskill Development, LLC v. Park Place Entertainment Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002)). For example, a party has sufficient standing to challenge a subpoena issued to a bank that seeks disclosure of that party's financial records. See Schmulovich, 2007 WL 2362598, at *2.

On the other hand, though, a party generally does not have standing to challenge a third-party subpoena based on a theory of undue burden. See Malibu Media, 2012 WL 3089383, at *8 ("Defendant is not faced with an undue burden because the subpoena is directed at the [I]nternet [S]ervice [P]rovider and not the Defendant."); Third Degree Films, Inc. v. Does 1-118, 2011 WL 6837774, at *3 (D. Md. Dec. 28, 2011) ("Defendants' argument that the subpoena presents an undue burden is unavailing because the subpoena is directed toward the ISPs and not the Doe Defendants and accordingly does not require them to produce any information or otherwise respond."). Instead, "[i]t is the Internet Service Provider that is compelled to disclose the information, and thus, its prerogative to claim an undue burden." Malibu Media, 2012 WL

---

[4] Ordinarily, any motion to quash or modify a subpoena directed to a non-party must be brought by the non-party itself. See Thomas v. Marina Assoc's, 202 F.R.D. 433, 434-35 (E.D. Pa. 2001).

3089383, at *8 (citing First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 257 (N.D. Ill. 2011)).

In this case, Defendants have advanced four arguments in favor of their respective Motions: (1) the Subpoenas seek disclosure of privileged or other private data; (2) the Subpoenas impose an undue burden; (3) the information is not relevant; and (4) Defendants were improperly joined.[5] To the extent that any of Defendants' arguments derive from an "undue burden" theory, they could be barred by lack of standing alone. However, the Court will nonetheless address each of Defendants' substantive concerns. For the reasons discussed below, the Court does not find any of Defendants' arguments as persuasive reasons to quash the Subpoenas.

### 3. Plaintiff's third-party Subpoenas do not seek privileged or protected material

FED R. CIV. P. 45(c)(3)(A)(iii) requires a court to quash a subpoena if the subpoena seeks "disclosure of privileged or other protected matter, if no exception or waiver applies." However, "[t]he burden rests squarely on the Defendant, as the moving party, to demonstrate that a privilege exists and that the subpoena would disclose such information." Malibu Media, 2012 WL 3089383, at *5 (citing Total Containment, 2008 WL 1995298, at *2).

In this case, neither Defendant has adequately presented the argument that the information sought is privileged. John Doe # 25 simply asserts that he or she has "privacy and proprietary interests over the information sought." John Doe # 25's Br. at 6.[6] Apparently, the

---

[5] The Court notes that improper joinder is not a basis for quashing a subpoena under F. R. CIV. P. 45.

[6] Some courts have interpreted this argument as implicating a Doe defendants' First Amendment right to privacy, as measured against their right to remain anonymous and against the plaintiff's need for disclosure. See, e.g., Sony Music Entm't v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004). This argument has been rejected by courts in this district and others in the Third Circuit. See K-Beech, Inc. v. John Does 1-39, 2:11-cv-4776-FSH-PS, dkt. no. 34 (D.N.J. Jan. 6, 2012) (Order denying Motion to Quash and Sever); Patrick Collins, Inc. v. John Does 1-43, 2:11-cv-

"confidential, personal identity information" is considered private by Defendants because it is "shared only between the Defendant, as Internet subscriber, and his ISP." John Doe # 25's Br. at 6. John Doe # 21 does not address the issue of privilege or privacy. Without more, the Court finds Defendants have not satisfied their burden of establishing the existence of any privileged or protected information. Cf. Schmulovich, 2007 WL 2362598, at *3 (finding no privilege in financial records, even where defendant had standing to challenge third-party subpoena).

Nor are Defendants' arguments regarding privacy availing. "An [I]nternet user engaging in peer to peer file sharing has a minimum expectation of privacy." Malibu Media, 2012 WL 3089383, at *8 (citing Raw Films, Ltd. v. John Does 1-15, 2012 WL 1019067, at *8 (E.D. Pa. Mar. 26, 2012); Sony Music, 326 F.Supp.2d 556, 566–67). This expectation of privacy is even lower where the peer to peer file sharing is alleged to be in violation of copyright laws. See Sony Music, 326 F. Supp. 2d 556, 566-67. Thus, courts have consistently held that "Internet subscribers do not have a reasonable expectation of privacy in their subscriber information." First Time Videos, 276 F.R.D. 241, 247 (citing Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. Kg. v. Does 1-4, 577, 736 F. Supp. 2d 212, 216 (D.D.C. 2010)). This is because "the [I]nternet subscribers have already voluntarily conveyed their subscriber information—name, address and phone number—to their [I]nternet [S]ervice [P]rovider." Malibu Media, 2012 WL 3089383, at *8 (citing First Time Videos, 276 F.R.D. 241, 247; Achte/Neunte, 736 F. Supp. 2d 212, 216).

Here, Defendants, having already disclosed their personal information to their ISPs in order to set up their Internet accounts, cannot make out a claim of privilege or privacy which

---

4203-FSH-PS, dkt. no. 24 (D.N.J. Jan. 6, 2012) (Order denying Motion to Quash and Sever); see also Malibu Media, 2012 WL 3089383, at *6-7 (finding Defendants' arguments do not offend First Amendment).

would serve as a basis for quashing the Subpoenas under Rule 45. See, e.g., First Time Videos, 276 F.R.D. 241, 247-48 (finding disclosure of personal information to ISP negates privacy interests); Call of the Wild Movie, LLC v. Smith, 274 F.R.D. 334, 339-40 (D.D.C. 2011) (same).

### 4. Undue Burden

In the first instance, Defendants do not have standing to contest the third-party Subpoenas on the basis of undue burden. See, e.g., West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9, 16 (D.D.C. 2011). This point notwithstanding, Defendants have not proved that the Subpoenas impose an undue burden upon them.

An undue burden exists when "the subpoena is 'unreasonable or oppressive.'" In re Lazaridis, 2011 WL 3859919, at *2 (D.N.J. Sept. 1, 2011) (quoting Schmulovich, 2007 WL 2362598, at *4). While there is no strict definition of "unreasonable or oppressive," courts have used several factors to determine the reasonableness of a given subpoena:

(1) the party's need for the production;
(2) the nature and importance of the litigation;
(3) the relevance of the material;
(4) the breadth of the request for production;
(5) the time period covered by the request;
(6) the particularity with which the documents are described; and
(7) the burden imposed on the subpoenaed party.

Id. Once again, "it is the moving party's burden to demonstrate that the subpoena is burdensome and unreasonable." Id.

Defendants advance two primary reasons why the Subpoenas impose an undue burden on them.[7] First, Defendants argue the Subpoenas seek information that is not relevant. For the reasons discussed below, the Court finds the information sought by the Subpoenas is relevant to

---

[7] Defendants appear to argue that the subpoenas impose an undue burden under both FED. R. CIV. P. 45 and FED. R. CIV. P. 26(c)(1). Because Defendants make little effort to separate their arguments with respect to each claim for relief, the Court will address the issues jointly to the extent possible.

the instant litigation. Second, Defendants draw attention to the "coercive litigation tactics" employed by Plaintiff. The Court interprets this latter argument as a request for a protective order under FED. R. CIV. P. 26(c)(1). This argument also fails for the reasons discussed below.

As to the other factors of the "undue burden" analysis articulated above, Plaintiff asserts there is no other way for it to obtain the identities of the John Doe Defendants than via their respective ISPs. Pl.'s Opp. Br. at 9. In the absence of this identifying information, Plaintiff would be unable to protect the legitimate interests it has in the named copyrights. Id. at 11. The Subpoenas, to this end, are narrowly and discretely tailored to obtain only the limited information necessary to identify each John Doe defendant. The Court, therefore, concludes the Subpoenas are neither unreasonable nor oppressive and, further, that the Subpoenas do not impose an undue burden on Defendants.

### 5. Relevance

"A Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under FED. R. CIV. P. 26(b)(1)." Schmulovich, 2007 WL 2362598, at *2 (citing Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591 (D. Kan. 2003)). If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon timely motion by the party served. Id.

Of course, the scope of discovery in federal litigation is broad. See FED. R. CIV. P. 26(b)(1). Parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense—including . . . the identity and location of persons who know of any discoverable matter." Id. Information sought by the parties need not be admissible at trial if it is "reasonably calculated" to lead to discoverable information. Id.

The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. See Barnes Found. v. Twp. of Lower Merion, 1996 WL 653114, at *1 (E.D. Pa. Nov. 1, 1996). Importantly, "courts have construed this rule liberally, creating a broad vista for discovery." Takacs v. Union County, 2009 WL 3048471, at *1 (D.N.J. Sept. 23 2009) (citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981)); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Evans v. Employee Benefit Plan, 2006 WL 1644818, at *4 (D.N.J. Jun. 6, 2006). Thus, the relevancy standard is satisfied, and discovery requests should be granted, if there is any possibility that the information sought may be relevant to the general subject matter of the action. Oppenheimer, 437 U.S. 340, 351.

Defendants claim the Subpoenas should be quashed because they are not likely to lead to discovery of relevant information. See John Doe # 25's Br. at 7-8; John Doe # 21's Reply at 7. The crux of Defendants' argument is that an IP address is not a reliable proxy for identity. See John Doe # 25's Br. at 8 ("[A]n IP address is not necessarily correlated with the individual targeted in an allegation of copyright infringement"); John Doe # 21's Reply at 7 ("There is simply no evidence that the individual defendants were the *actual* infringers of Malibu's [W]orks."). More specifically, Defendants argue: (1) the actual copyright infringer is unlikely to be the person to whom the IP address is registered; and (2) the process used by Plaintiff to identify the allegedly infringing IP addresses is flawed. See John Doe # 25's Br. at 10-11; John Doe # 21's Reply at 7-8. Thus, according to John Doe # 25, "the correct party to be sued in this lawsuit is neither named nor likely ever to be found." John Doe # 25's Br. at 11.

Defendants' arguments are unpersuasive. The plain language of Rule 26 requires only that the discovery requested be reasonably calculated to lead to discovery of admissible

evidence. It does not require, as Defendants suggest, that the identity of the alleged infringer be ascertained with absolute certainty. In a nearly identical case, the District Court for the Eastern District of Pennsylvania aptly summarized the requirements of Rule 26(b)(1):

> Here, even assuming *arguendo* that the subscribers' name and information is not the actual user sought, we are of the opinion that it is reasonable to believe that it will aid in finding the true identity of the infringer and, therefore, that it is relevant. This is especially true, as in this case, where there is no other way to identify the proper defendants and proceed with the claims against them.

Malibu Media, 2012 WL 3089383, at *10 (further citing OMS Investments, Inc. v. Lebanon Seaboard Corp., 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)). Given the "judicial predilection toward liberalized discovery and the ample supporting precedent," id., the Court is satisfied that the information sought by the Subpoenas is, at a minimum, likely to lead to the discovery of relevant information.

### a. Protective Order

Consistent with its obligations under FED. R. CIV. P. 26(b)(1), a court may nonetheless limit discovery of relevant information. See FED. R. CIV. P. 26(c)(1). Pursuant to FED. R. CIV. P. 26(c)(1), "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The court's remedies may include one or more of the following:

(A) forbidding the disclosure of discovery;
(B) specifying terms, including time and place, for the disclosure or discovery;
(C) prescribing a discovery method other than the one selected by the party seeking discovery;
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
(E) designating the persons who may be present while the discovery is conducted; or
(F) requiring that a deposition be sealed and opened only on court order.

FED. R. CIV. P. 26(c)(1).

Defendants argue Plaintiff's coercive litigation tactics warrant a protective order that denies the discovery sought or allows Defendants to proceed anonymously. For the reasons discussed above, the Court finds no grounds to support the issuance of a protective order.

The Court also denies Defendants' request to proceed anonymously. "Courts have explained that Federal Rule of Civil Procedure 10(a) illustrates 'the principle that judicial proceedings, civil as well as criminal, are to be conducted in public.'" Doe v. Megless, 654 F. 3d 404, 408 (3d. Cir. 2011) (citing Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 872 (7th Cir.1997)). Absent exceptional circumstances, a party may not proceed to litigate in federal court anonymously. Id. That a party "may suffer embarrassment or economic harm is not enough." Id. Instead, the party must show "'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.'" Id. (citing Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1043 (9th Cir.2010)). "Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.'" Id. (citing Doe v. Borough of Morrisville, 130 F.R.D. 612, 614 (E.D. Pa. 1990)).

In this case, Defendants contend they may be subject to humiliation and ridicule if their names appear next to the allegations in the Complaint. See John Doe # 25's Br. at 5; John Doe # 21's Reply Br. at 7. Moreover, Defendants argue that Plaintiff is engaging in coercive litigation tactics in an effort to extract settlement payments. See John Doe # 25's at 5; John Doe #21's Reply Br. at 7. Chief among these tactics, according to Defendants, is the insinuation of public disclosure. See John Doe # 25's Br. at 5; John Doe # 21's Reply Br. at 7. Plaintiff allegedly threatens disclosure of Defendants' names "alongside the allegations of copyright infringement

of a film, the title of which is usually obnoxious and vulgar." John Doe # 25's Br. at 5. According to Defendants, Plaintiff does not have "the desire to prove his case on the merits; rather, he engages in a fishing expedition to hassle, embarrass (given the pornographic character of the film) and extract payment from the Doe Defendants." John Doe # 25's Br. at 4-5.

Here, Defendants' broad claim of potential reputational injury fails to articulate a reasonable fear of severe harm. See Malibu Media, 2012 WL 3089383, at *9. While the Court acknowledges there may be "some social stigma attached to consuming pornography . . . it is [nonetheless] the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove." Patrick Collins, Inc. v. John Does 1-54, 2012 WL 911432, at *4 (D. Ariz. Mar. 19, 2012) (denying protective order sought under FED. R. CIV. P. 26(c)(1) to shield John Doe defendant accused of illegally downloading pornography); see also Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 453 (D. Mass. 2011) ("The potential embarrassment to [Defendants] of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously."). Accordingly, Defendants' request to proceed anonymously is denied.

### B. Motions to Sever

#### 1. Legal Standard

Joinder of multiple defendants in a single lawsuit is governed by the two-part test set forth in FED. R. CIV. P. 20(a)(2). First, the right to relief must be asserted against the defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(2)(A). Second, there must be common questions of fact or law. FED. R. CIV. P. 20(a)(2)(B). Although misjoinder is

not a ground for dismissal, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Id.

The Supreme Court has stated that "the impulse [under the Rules] is toward entertaining the broadest possible scope of action" and "joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). "The sensible interpretation of Rule 20 by the United States Supreme Court in Gibbs is to promote judicial economy, prevent a multiplicity of lawsuits and reduce inconvenience, delay and added expense." Malibu Media, 2012 WL 3089383, at * 2 (citing Gibbs, 383 U.S. 715, 724; Al Daraji v. Monica, 2007 WL 2994608, at *10 (E.D. Pa. Oct. 21, 2007)). A liberal interpretation of the joinder rules is also consistent with FED. R. CIV. P. 1, which provides each rule should be "construed and administered to secure the just, speedy, and inexpensive determination of every action or proceeding."

"Permissive joinder rests within the sound discretion of the court, who must determine whether the proposed joinder 'comport[s] with the principles of fundamental fairness.'" New Jersey Mach., Inc. v. Alford Indus., Inc., 1991 WL 340196, at *1 (D.N.J. Oct. 7, 1991) (quoting Shaw v. Munford, 526 F. Supp. 1209, 1213 (S.D.N.Y. 1981)). "[S]everance of parties where joinder is not required is committed to the court's discretion if it finds that the objectives of the rule are not fostered, or that joinder could 'result in prejudice, expense or delay.'" Raw Films, 2012 WL 1019067, at *3 (quoting 7 Charles Alan Wright, et al., *Federal Practice & Procedure* § 1652 (3d ed. 2001)).

> **2. Plaintiff has asserted a right to relief jointly and severally against all defendants**

Plaintiff's Complaint asserts that each of the Defendants is jointly and severally liable for the alleged infringement. Pl.'s Compl. at ¶ 11. Therefore, Plaintiff has satisfied the requirements of FED. R. CIV. P. 20(a)(2)(A). See Malibu Media, 2012 WL 3089383, at *3.

> **3. The alleged actions of Defendants arise from the same transaction or occurrence, or series of transactions or occurrences, and involve common questions of fact and law**

"'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." In re Prempro Products Liab. Litig., 591 F.3d 613, 622 (8th Cir. 2010), cert. denied, 131 S. Ct. 474 (2010), (citation omitted); see also Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F. 3d 384, 390 (3d Cir. 2002) (interpreting "transaction and occurrence" under FED. R. CIV. P. 13 to mean a logical relationship which bears the same factual and/or legal issues). "Situations where the same factual or legal issues would result in substantial duplication of effort and time by the parties and the courts form a logical relationship." Malibu Media, 2012 WL 3089383, at *4 (citing Xerox Corp. v. S.C.M. Corp., 576 F. 2d 1057, 1059 (3d Cir. 1978)).

In this case, joinder is appropriate because Defendants allegedly participated in the same transaction or occurrence, or series of transactions or occurrences, which gave rise to the infringement alleged in the Complaint. Specifically, Plaintiff alleges that its investigator, IPP, identified each Defendant's IP address as a participant in a "swarm" which transmitted Plaintiff's protected Works. Pl.'s Compl. at ¶¶ 39-45. In Raw Films, the Court appropriately and succinctly explained the implications of participation in such a swarm:

> Even if no Doe defendant directly transmitted a piece of the Work to another Doe defendant, the Court is satisfied that at this stage of the litigation, the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.

2012 WL 1019067, at *4. This Court agrees. Further, no individual Defendant will be prejudiced by joinder at this stage in the proceeding. To the contrary, all Defendants "may benefit from joinder by permitting them to obtain the same discovery from the plaintiff or allowing them to see any defenses raised by other Doe defendants." Id. (citing Call of the Wild, 770 F. Supp. 2d 332, 344 (citation omitted)).

This case also involves common questions of fact and law. F. R. Civ. P. 20(a)(2)(B)'s commonality requirement is a "lax standard whose 'threshold' has been described as 'very low.'" Malibu Media, 2012 WL 3089383, at *4 (citing Al Daraji v. Monica, 2007 WL 2994608, at *10 (E.D. Pa. Oct. 21, 2007)). In this case, the claims and defenses "will feature largely duplicative proof regarding the nature of BitTorrent, the plaintiff's ownership interest in the copyright of the Work, and forensic investigation conducted by the plaintiff." Raw Films, 2012 WL 1019067, at *4. Moreover, joining multiple defendants at this early stage of the proceeding will prevent a multiplicity of lawsuits and further judicial efficiency. See id; FED. R. CIV. P. 1. Thus, the commonality requirements of Fed. R. Civ. P. 20(a)(2)(B) are satisfied, and joinder is appropriate.

Finally, the Court recognizes that other courts are split as to the appropriateness of joining multiple anonymous defendants in BitTorrent copyright infringement cases. Compare Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840, at *9-10 (E.D. Mich. Apr. 5, 2012) (allowing joinder), with Hard Drive Prods., Inc. v. Does 1-30, 2011 WL 4915551, at *4 (E.D. Va. Oct. 17, 2011) (denying joinder); see also Malibu Media, 2012 WL 3089383, at *3 (collecting cases). Still, many of the Courts that permitted joinder have also allowed individual defendants,

once named and served, to challenge its appropriateness at a later time in the case. See, e.g., Raw Films, 2012 WL 1019067, at *5 (collecting cases). This is a sensible approach; thus, Defendants' Motions to Sever at this stage of the proceeding are denied without prejudice.

## III.    CONCLUSION AND ORDER

The Court having considered the papers submitted and the arguments of counsel pursuant to FED. R. CIV. P. 78, and for the reasons set forth above;

**IT IS** on this 12th day of December, 2012,

**ORDERED** that John Doe # 25's Motion to Quash and Sever is **DENIED**; and it is further

**ORDERED** that John Doe # 21's Motion to Quash and Sever, and to Proceed Anonymously is **DENIED**.

s/ Douglas E. Arpert\
DOUGLAS E. ARPERT, U.S.M.J.
